## Wilson, et al. v. Rockcastle Mining, Lumber & Oil Company.

(Decided October 16, 1923.)

### Appeal from Boyd Circuit Court.

1. New Trial—Sufficient in Action for New Trial to Allege Facts Showing Defense and Introduce Evidence Making Question for Jury.—In a common law action to vacate a judgment and obtain a new trial, all that is necessary, under the rule that the applicant must prove a valid defense, is to allege facts showing that the applicant has a valid defense and to support the averment by evidence sufficient to take the case to the jury.

2. Appeal and Error—Discretion in Trial Court as to Granting New Trial Only Disturbed when Abused.—In granting and refusing new trials, trial courts have a broad discretion, which will not be interfered with, except in case of abuse, and the Court of Appeals is less inclined to set aside a judgment granting than one refusing a new trial.

3. New Trial—No New Trial for Negligence of Agent Served in Suit Against Corporation.—If agent in state, designated by corporation as one on whom process might be served, failed to notify the corporation of the pendency of an action through mere negligence, such failure would not furnish ground for new trial.

4. New Trial—Unavoidable Casualty and Misfortune or Fraud Supported by Evidence.—Evidence in action for new trial held to sustain a finding that plaintiff corporation had judgment entered against it through unavoidable casualty and misfortune, or fraud practiced by the successful parties in obtaining the judgment, in that the corporation's agent for service of process was too ill to attend to business, or was hostile to the corporation and permitted default judgment to be entered.

5. Appeal and Error—Immaterial that Reviewing Court Would Have Reached Different Conclusion.—On review of a judgment granting a new trial on the ground of unavoidable casualty and misfortune or fraud, findings by the chancellor will not be disturbed merely because the reviewing court, if it had sat in the place of the chancellor, would have reached a different conclusion.

S. S. WILLIS and L. W. BETHURUM for appellants.

GEORGE B. MARTIN, HIRAM J. JOHNSON and C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Rockcastle Mining, Lumber & Oil Company, a corporation organized under the laws of the state of Kentucky, was the owner of 26,000 acres of timber and coal land located in Jackson and Rockcastle counties. On January 26, 1906, it filed with the secretary of state a statement designating E. L. Cockrell, of Livingston, Rockcastle county, as its agent upon whom process might be served in any suit against the company.

On November 22, 1913, R. E. L. Wilson and E. E. Fullerton brought suit against the company in the Boyd circuit court to recover a commission for the sale of its lands. The basis of the suit was an alleged contract theretofore made, by which they were to sell the lands and receive for their services all that they might obtain for the property in excess of $600,000.00. They averred that they procured a purchaser who was ready, able and willing to buy at the price of $750,000.00, but that the company breached its contract by refusing to consummate the sale, and thereby damaged them in the sum of $150,000.00. Summons was issued and served December 1, 1913, on E. L. Cockrell, who failed to notify the company. The first succeeding term of court at which it was the practice to try civil cases began on the second Monday in March, 1914. On April 10, 1914, a default judgment for the $150,-000.00 was rendered against the company. Execution was issued thereon and returned "No property found," as the company had theretofore disposed of its lands to the Bond Lumber Company.

On June 1, 1914, the company brought this suit against the plaintiffs in the original action to vacate the judgment and obtain a new trial. From the judgment granting the relief prayed for, this appeal is prosecuted.

The grounds on which the new trial was sought were unavoidable casualty and misfortune which prevented the company from appearing and defending, and fraud practiced by the successful parties in obtaining the judgment, while the defenses pleaded in the original action were in substance as follows: (1) It made no contract with appellants for the sale of the property; (2) the person who, it is claimed, made the contract on behalf of the company was without authority to represent the company; (3) appellants had no purchaser and no reasonable expectation of obtaining one.

Perhaps the greater portion of the voluminous record consists of evidence supporting the foregoing defenses, and of evidence introduced by appellants tending to show that the defenses were without merit. In view of the rule that the applicant for a new trial in a case like this must allege and prove that he has a valid defense, the case has been discussed on its merits, and we are asked to review the evidence as a whole and finally decide that none of the defenses were meritorious. Where a new trial of an equitable action is sought, it is entirely proper for the chancellor, who alone has the power to decide the case, to consider the application for a new trial and the merits of the case together, and grant final relief. Reneke v. Morse, 7 Ky. L. Rep. 45; Burks v. Douglas, 156 Ky. 462, 161 S. W. 225; Garr Scott & Co. v. Vanhook, 162 Ky. 332, 172 S. W. 680. But this rule is not applicable to a common law action like this, which either party is entitled to have tried by a jury. In such a case, all that is necessary is to allege facts showing that the applicant has a valid defense, and to support the averments by evidence sufficient to take the case to the jury. That the evidence introduced by the appellee met the requirements of this rule there can be no doubt, and we therefore refrain from expressing an opinion on the merits of the case.

The unavoidable casualty and fraud relied on for a new trial are that Cockrell who, many years before, had been designated as the company's agent for the service of process, failed to notify the company of the original suit either because of his illness and incapacity to attend to business, or because of his hostility to the company, coupled with a collusive agreement made with appellants not to let the company know of the pendency of the suit. The evidence in support of these grounds may be summarized as follows: The summons was served on Cockrell on December 1, 1913. The next term of the Boyd circuit court began on the second Monday in March, 1914. Cockrell died on February 18, 1914, and for several days before his death was confined to his bed, and even before that the circumstances were such as to show that he was giving but little, if any, attention to business. The summons was frequently seen on and about his desk before his death, and was found there after his death. Bowman, a political enemy of Cockrell, was engaged in securing a right of way for the company. Because of this, Cockrell developed a hostile attitude toward the company, and one

witness deposed that, after the service of the summons, Cockrell said to him, "I don't care anything about the d— thing. I don't care if they do get a judgment against them, for they have throwed me down." Another witness claims to have been present on an occasion in May, 1913, and to have heard one of the appellants say to Cockrell, "Don't let them know anything about it," to which Cockrell replied, "I won't. I don't care if you were to get a judgment large enough to take all the land the company has." The witness then asked Cockrell who the gentleman was. Cockrell said, "It is a man here on other business. That ends all of it. When he gets through with them, they won't need any railroad." On the other hand, there was evidence to the effect that Cockrell was a man of good character, fine business capacity, and that for the greater portion of the time between the service of the summons and his death he was able to attend to business. Appellants also denied very vehemently that appellant, who, it is claimed, had the above conversation with Cockrell, had any such conversation, or was present on the occasion testified to by the witness. They also introduced other evidence tending to show the improbability of the story.

In granting and refusing new trials, trial courts have a broad discretion which will not be interfered with except in case of abuse, and this court is less inclined to set aside a judgment granting than one refusing a new trial. Algee v. Algee, 168 Ky. 362, 182 S. W. 197; Henry Vogt Machine Co. v. Pa. Iron Works Co., 66 S. W. 734. Of course, if Cockrell's failure to notify the company of the pendency of the original action was due to mere negligence on his part, such failure would have furnished no ground for a new trial. Reese Lumber Co. v. Licking Coal & Lumber Co., 156 Ky. 723, 161 S. W. 1124. Cockrell is dead, and the reason for his failure can only be inferred from the attendant circumstances. Even if we disregard his alleged hostility and collusive agreement with appellants, and consider only his illness, we are not prepared to say that he was necessarily negligent in not notifying the company prior to his illness. He died on February 18th, and was ill for about two weeks before his death. When he became ill the company's answer was not due for more than a month, and he still had sufficient time in which to give reasonable notice to the company, and if he intended in good faith to do so, but was prevented by

his illness and death, it seems to us that, so far as the company is concerned, this was an unavoidable casualty which prevented it from appearing and defending. In addition to this, there was evidence of hostility on the part of Cockrell, coupled with the collusive agreement with one of appellants not to inform the company of the service of the process, a state of affairs which, if true, would make out a case of fraud practiced by the successful party in obtaining the judgment. It may be that no such occurrence took place. It may be that if we had sat in the place of the chancellor, we would have reached a different conclusion, but that is not the test to be applied. It is sufficient to say that while there was strong evidence to the contrary, there was evidence tending to support the charge, and as the solution of the question depended on the credibility of the witnesses, we are not prepared to hold that the chancellor should have believed the witnesses for appellants rather than the witnesses for appellee. Having this view of the case, we are unable to say that the chancellor abused a sound discretion in granting a new trial.

Judgment affirmed.

Whole court sitting.